UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PAULA REYNOLDS,

        Plaintiff,                                        Case No.: 3:12-CV-334

vs.

COMMISSIONER OF                            District Judge Walter H. Rice
SOCIAL SECURITY,                             Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER FOR AN IMMEDIATE AWARD OF DIB BENEFITS WITH AN ONSET DATE OF JANUARY 23, 2003; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 11), Plaintiff's Reply (doc. 12), the administrative record (doc. 6), and the record as a whole.[2]

**I.**

**A. Procedural Background**

Plaintiff filed for DIB on May 9, 2003, alleging a disability onset date of January 23, 2003. Tr. 70. Plaintiff claimed to be disabled due to a number of impairments including, *inter alia*, degenerative disc disease. Tr. 71. Following initial administrative denials of Plaintiff's

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

application, a hearing was held before ALJ Melvin A. Padilla on October 16, 2006. Tr. 21. ALJ Padilla issued a decision on May 24, 2007, finding Plaintiff not disabled. Tr. 563. Plaintiff appealed, and in response the Appeals Council vacated ALJ Padilla's findings and remanded the matter to ALJ Amelia Lombardo (hereafter "ALJ Lombardo" or "the ALJ") for proceedings consistent with the Appeals Council's Remand Order. Tr. 566. Pursuant to that Order, a second administrative hearing was held on June 25, 2010. Tr. 18. ALJ Lombardo issued her decision on October 5, 2010, finding Plaintiff not disabled. Tr. 28. Specifically, ALJ Lombardo's findings were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007;

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 23, 2003 through her date last insured of June 30, 2007 (20 C.F.R. § 404.1571 *et seq.*);

3. Through the date last insured, the claimant had the following severe impairments: 1) cervical and lumbar degenerative disc disease with residuals of surgery; and 2) mood disorder (20 C.F.R. § 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526);

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC)[3] to perform light work as defined in 20 C.F.R. § 404.1567(b) featuring: 1) alternation of sitting and standing as needed; 2) no climbing of ladders, scaffolds, or working at unprotected heights; 3) occasional balancing, stooping, kneeling, crouching, or crawling; 4)

---

[2] Hereafter, citations to the administrative record will refer only to the transcript number, or "Tr." Additionally, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 8 at PageID 57-65; Tr. 18-28, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

[3] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain. 20 C.F.R. § 404.1545(a). The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. §§ 404.1545(b), (c), and (d).

    occasional reaching overhead; 5) low stress jobs with no inherently hazardous or dangerous activities and no production quotas; and 6) simple instruction with no extended periods of concentration. By definition, light work ordinarily requires the capacity to lift 10 pounds frequently and 20 pounds occasionally, and to engage in a good deal of sitting, standing, or walking;[4]

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565);

7.  The claimant was . . . 35 years old, defining her as a younger individual on the date last insured (20 C.F.R. § 404.1563);

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564);

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ["the Grid"] as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*see* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2);

10.  Through the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)); [and]

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 23, 2003, the alleged onset date, through June 30, 2007, the date last insured (20 C.F.R. § 404.1520(g)).

Tr. 18-28 (brackets and footnotes added).

  Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ Lombardo's non-disability finding the final administrative decision of the Commissioner. Tr. 9; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely

---

[4] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b).

appeal challenging ALJ Lombardo's analysis. *Cook v. Comm'r of Soc. Sec.,* 480 F.3d 432, 435 (6th Cir. 2007).

### B. Medical History

Plaintiff underwent four spinal surgeries between 1999 and 2008. Tr. 754-55. On October 4, 1999, she was diagnosed by her treating neurosurgeon, William O. Smith, M.D., with a spinal condition known as spondylolisthesis.[5] Tr. 186-87. Dr. Smith reported that "surgical treatment is being anticipated . . . and [Plaintiff] may undergo disc excision at L4-5 and decompression and fusion . . . at some time in the near future." Tr. 186. Following this diagnosis, Dr. Smith performed a posterolateral fusion of Plaintiff's spine in November 1999. Tr. 196.

Following her treatment with Dr. Smith, Plaintiff began treatment with a second neurosurgeon, Arthur Neil Cole, M.D., in 2003. Tr. 414. During this time, she expressed complaints of neck and back pain, and a loss of sensation in her extremities. *Id.* Dr. Cole recommended that she undergo a second fusion surgery on her cervical spine. *Id.* A C5-C6 anterior cervical discectomy with fusion was performed on April 23, 2003. *Id.* Again, Plaintiff's condition persisted post-surgery. *Id.* In 2005, Dr. Cole recommended that Plaintiff's symptoms might again be improved with surgery. Tr. 415. Dr. Cole performed an L4 anterior lumbar interbody fusion -- her third surgery -- in February 2005. *Id.* Dr. Cole assessed Plaintiff as "disabled for a period exceeding twelve months" following this procedure. *Id.*

Plaintiff began treatment with a pain specialist, Stephen Watson, M.D., in 2004. Tr. 517. He treated Plaintiff with injections for lumbar facet syndrome. Tr. 518-21, 555. Dr. Watson indicated that Plaintiff's impairments left her incapable of performing work. Tr. 518-21. Also

---

[5] Spondylolisthesis is a condition in which a bone (vertebra) in the spine slips out of the proper position and onto the bone below it. *Stedman's Medical Dictionary* 1813 (28th ed. 2006).

during this time period, a primary care physician, Alex Tambrini, M.D., treated Plaintiff. Tr. 488-502. He identified several physical and mental impairments, and opined that Plaintiff was markedly limited due to high levels of pain and depressive symptoms. Tr. 489-500. In March 2006, Dr. Tambrini assessed Plaintiff's RFC and concluded that she was incapable of performing work at any level. Tr. 502.

In July 2006, following his prior treatment of Plaintiff, Dr. Smith was hired by the State agency to offer a consultative evaluation in review of Plaintiff's disability claim. Tr. 522. At this time he no longer served as Plaintiff's treating physician, but was instead employed by the American Board of Independent Medical Examiners and hired by the Bureau of Disability Determination ("BDD") to make an assessment. *Id.* Following his examination of Plaintiff, Dr. Smith opined that she had significantly diminished range of motion in the lower spine. Tr. 523. However, he found just mild restriction of motion in the neck and normal strength, intact sensation, normal gait, and normal handling. Tr. 525-28. He found her capable of performing light work with limitations. Tr. 528.

In April 2008, Plaintiff underwent a diagnostic MRI which found disc herniation at C4-5. Tr. 662. Following this diagnosis, Dr. Cole recommended that Plaintiff would benefit from a C4-5 anterior cervical discectomy. Tr. 656. Dr. Cole opined that surgery was the only option to improve Plaintiff's back pain, other than entering a treatment program for chronic pain management. *Id.* Dr. Cole thus performed a fourth surgery on her cervical spine on November 13, 2008. Tr. 644. Following the procedure, Dr. Cole reported a successful surgery, but Plaintiff still suffered from "persistent pain." *Id.* Dr. Cole recommended a pain management evaluation from V. Brandon Thompson, M.D. for Plaintiff's post-surgery condition. *Id.*

Dr. Thompson saw Plaintiff on November 24, 2009. Tr. 736. He observed a full functional range of motion in her cervical and lumbar regions, but noted pain inhibition with movements of each. *Id.* He assessed normal strength and no neurological defects. *Id.* Dr. Thompson diagnosed Plaintiff with chronic pain syndrome, and reported that she continued to experience low back discomfort. *Id.* He suggested interventional techniques, such as epidural injections, to help decrease her discomfort. *Id.*

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the Commissioner has a "'zone of choice' within which [he or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is

"disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997). During the first four steps of the five-step sequential analysis, the claimant has the burden of proof. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520. Should the claimant meet all requirements of the previous steps, at Step 5 the burden shifts to the Commissioner to establish that the claimant retains the RFC to perform other substantial gainful activity existing in the national economy. *Key*, 109 F.3d at 274.

### III.

On appeal, Plaintiff argues that ALJ Lombardo erred in two respects: (1) by relying on Dr. Smith's 2006 opinion; and (2) by failing to give sufficient weight to her treating physicians.[6] Doc. 8 at PageID 66-76. For the reasons that follow, the Court finds ALJ Lombardo failed to correct the errors committed by ALJ Padilla in the first administrative decision, as identified by the Appeals Council. Dr. Smith's involvement in this case, regardless of his findings and regardless of the weight given by the ALJ to his opinion, merits reversal in and of itself.

To be clear, there is an inherent and rather obvious conflict when a former treating physician evaluates a claimant, performs surgery, later ends the treatment relationship with that patient, and then, thereafter, seeks to serve a different role -- not as a treater, but as an evaluating physician -- and, in this latter role, is an adversary, and testifies against the claimant, his former patient. A doctor, in a case such as this, may serve one role and one role only: treating physician; examining physician; or record reviewing physician. The purpose of Social Security appeals, as in all cases, is to do justice and render an appropriate decision in accordance with the

---

[6] Plaintiff also argues that ALJ Lombardo improperly evaluated her credibility regarding her complaints of disabling pain. In light of the Court's favorable decision on Plaintiff's first two assignments of error, *see infra,* the Court need not determine whether or not the ALJ's credibility assessment is supported by substantial evidence. Nonetheless, the Court recognizes that an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *See Casey*, 987 F.2d at 1234. As such, this assignment of error is unpersuasive.

law. It is for this reason that Congress has appropriately granted many levels of due process review in these cases: application, review of same, then denial; reconsideration by SSA; review with counsel before an ALJ; impartial review in the Federal Courts before the District Court, the Court of Appeals and, if *certiorari* is granted, the Supreme Court. The Supreme Court has held that applicants for Social Security disability benefits are entitled to due process in the determination of their claims. *See Perales*, 402 U.S. at 401-02 (finding due process requires that a Social Security process be "full and fair"). A doctor who serves two contrary roles, as occurred here, is an affront to the due process protections guaranteed in all Social Security cases -- process that is due equally, and fairly, to claimants and the Commissioner alike. *See, e.g.*, *Ferriell v. Comm'r of Soc. Sec.,* 614 F.3d 611, 620 (6th Cir. 2010) ("In the context of a [S]ocial [S]ecurity hearing, due process requires that the proceedings be full and fair").

### A. Dr. Smith

Dr. Smith functioned as Plaintiff's treating neurosurgeon for two years, from 1999 through 2000. Tr. 21. During that time, Dr. Smith performed the first of four surgeries on Plaintiff's back. Tr. 196-99. Dr. Smith did not generate a RFC assessment during his treatment relationship with Plaintiff. Plaintiff discontinued treatment with Dr. Smith in 2000, and began treatment with Dr. Cole thereafter. Tr. 21. In July 2006, the BDD hired Dr. Smith to function as a State consultative examiner in Plaintiff's disability case. Tr. 522. A consultative examiner is meant to provide a physical assessment of a claimant's disability status -- and typically does so through a one-time physical examination and report. 20 C.F.R. § 404.1519. Although Plaintiff "objected to Dr. Smith's involvement in the evaluation of her claim," Dr. Smith performed a physical examination of Plaintiff and produced a RFC assessment. Tr. 525-28, 566. His RFC assessment found Plaintiff capable of performing a limited range of light work. Tr. 531-33.

In the first administrative decision, ALJ Padilla relied almost entirely on Dr. Smith's opinion in making his RFC determination. ALJ Padilla held: "The finding[,] that the claimant can do a limited range of light work[,] essentially follows the recommendations of Dr. Smith . . . . [T]he opinion of Dr. Smith gets high marks and his opinion is accordingly given considerable weight." Tr. 558. While crediting Dr. Smith's opinion, ALJ Padilla also rejected the opinion of Plaintiff's treating physicians, including long-time treater Dr. Cole and pain management specialist Dr. Watson. Tr. 560. In its Remand Order, the Appeals Council recognized the inherent conflict in ALJ Padilla's decision, in that ALJ Padilla relied almost entirely on the opinion of Dr. Smith in determining Plaintiff's RFC. Tr. 566. The Appeals Council instructed that "[t]o insure the claimant received due process during the course of hearing, the case must be remanded to evaluate all of the medical opinion evidence in light of the pre-existing relationship between [Plaintiff] and Dr. Smith." *Id.*

On remand, ALJ Lombardo also relied almost exclusively upon Dr. Smith in determining Plaintiff's RFC. ALJ Lombardo found that "the record does not justify any deviation from the limited light RFC set forth previously in the hearing decision of May 24, 2007." Tr. 24. She again credited Dr. Smith's analysis as substantial evidence supporting Plaintiff's RFC, finding "[t]he detailed physical examination by Dr. Smith in July 2006 showed that the claimant retained good strength and neurological functions sufficient for her to carry out the demands of a limited range of light work." *Id.* In her decision, ALJ Lombardo attempted to lend credibility to Dr. Smith, finding Dr. Thompson's opinion "fully support[s] the earlier findings of Dr. Smith." *Id.* The Court interprets the ALJ's citation to additional evidence as an attempt to comply with the Remand Order, while re-crediting Dr. Smith's analysis, despite the inherent conflict his assessment presents.

According to the Remand Order, ALJ Lombardo should have evaluated all of the medical evidence in light of the pre-existing relationship between Plaintiff and Dr. Smith.  Tr. 566.  It is an ALJ's "basic obligation to develop a full and fair record."  *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1051 (6th Cir. 1983).  Pursuant to *Lashley*, and recognizing the obligation to hear Social Security cases -- both in this Court and before the ALJ -- in a fair and appropriate manner, affording the claimant all due process to which he or she is entitled, mandates that the Social Security disability process must be free of bias and fairly administered in all respects.  *Id.*  The Appeals Council recognized the potential conflict in Dr. Smith functioning as a consultative examiner and making a determination adverse to Plaintiff's interests.  Tr. 566-67.  Dr. Smith previously treated Plaintiff, and even performed surgery on her back.  As such, his interests diverged from Plaintiff's in that an assessment of "disabled" could possibly speak to his prior participation in her treatment.

Additionally, the Social Security Administration specifically addresses conflicts of interest in their regulations, providing: "Sometimes physicians and psychologists who do review work for us will have prior knowledge of a case . . . . Where this is so, the physician or psychologist will not participate in the review or determination of the case."  20 C.F.R. § 404.1519q; *see Weckbacher v. Comm'r of Soc. Sec.*, No. 2:11-CV-659, 2012 WL 2809697, at *6 (S.D. Ohio July 10, 2012) (Deavers, M.J.) ("[S]uggesting that physicians and psychologists who have prior knowledge of a case will not participate in case review").  As acknowledged in the Remand Order, Plaintiff objected to Dr. Smith's participation in her evaluation following their treatment relationship (Exhibit AC-1; Tr. 566), and such objections should be accepted if they provide, as here, "good reason."  20 C.F.R. § 404.1519j.

In her decision, ALJ Lombardo attempted to overcome the potential conflict inherent in relying upon Dr. Smith's opinion by citing the November 2009 consultation with Dr. Thompson. Tr. 736-37. The ALJ stated: "Counsel objected to reliance on the opinion of Dr. Smith . . . but another detailed consultative examination in November 2009 by Dr. Thompson also showed the claimant to have normal strength, a normal gait, and essentially intact neurological functions." Tr. 24. In doing so, the ALJ mischaracterized the nature of Dr. Thompson's consultation. She failed to indicate that Dr. Thompson did not generate a RFC and his consultation was performed for the purpose of providing medical treatment, not to evaluate Plaintiff's ability to perform work. Tr. 24.

Even if Dr. Smith's opinion were credited as providing proper evidence, notwithstanding the conflict of interest it presents, the overall evidence of record does not support the opinion. Nearly all the evidence cited by the ALJ in support of Dr. Smith's opinion occurred over two years after Dr. Smith made his RFC assessment, and after Plaintiff underwent a fourth, extensive surgery. This evidence is not probative of whether or not Dr. Smith's opinion was supported at the time it was given, and should not be used to retroactively lend Dr. Smith's opinion creedence. *See Casey*, 823 F.2d at 920 (finding a report was "minimally probative" where the doctor saw the claimant eight months after the expiration of insured status). The fact that the ALJ did not cite to supporting opinions from approximately the same time period as Dr. Smith's RFC assessment (July 2006) indicates that other, more contemporaneous opinions did not support Dr. Smith. These include disability assessments by Plaintiff's treating physician, Dr. Cole, in July 2005 finding Plaintiff "temporarily and totally disabled" for a period exceeding 12 months (Tr. 414-15); Dr. Watson's June 2006 finding where he opined that Plaintiff was not capable of performing even sedentary work on a sustained basis (Tr. 517-21); and Dr. Tambrini's

RFC assessment, also in 2006, in which he found Plaintiff incapable of performing work on a full-time basis (Tr. 489-500).

ALJ Lombardo performed essentially the same analysis as ALJ Padilla's vacated decision.  Tr. 557, 24.  On remand, ALJ Lombardo failed to follow the clear directive of the Appeals Council.  *See Spaugy v. Colvin*, No. 3:12-CV-81, 2013 WL 3350842, at *9 (S.D. Ohio July 3, 2013) (Ovington, M.J.), *adopted by* 2013 WL 3835425 (Rice, J.) (finding reversal is appropriate where an ALJ failed to comply with a Remand Order).  The ALJ's RFC finding, therefore is not supported by substantial evidence.

### B. Treating Physicians

In addition, for the reasons just stated, the Court also agrees with Plaintiff's argument that ALJ Lombardo failed to give appropriate weight to the medical opinions of her treating physicians, Drs. Cole, Tambrini, and Watson, and thus violated the "good reasons" rule applicable to treaters.  20 C.F.R. § 404.1527(c)(2).  The treating physician rule requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treater's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07. When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

Dr. Tambrini found Plaintiff disabled as of February 21, 2003, just weeks after her alleged onset date. Tr. 488. Pain specialist Dr. Watson subsequently opined in 2004 that Plaintiff was disabled. Tr. 517-20. Dr. Cole found Plaintiff disabled for a period exceeding twelve months following her third surgery in 2005. Tr. 414-15. Each of these treaters' opinions are consistent with one another and the result of an extensive treatment relationship. In terms of frequency of treatment, duration, and familiarity with Plaintiff's condition, Drs. Cole, Tambrini, and Watson treated Plaintiff on multiple occasions, knew her medical history, and observed her over time. The ALJ, without good reasons for doing so, rejected each of Plaintiff's treaters' disability findings. Tr. 24-27. The evidence of record is undisputed and overwhelmingly

suggests that Plaintiff was disabled as of her alleged onset date, January 23, 2003, and should be now so found.

### IV.

When, as here, the non-disability determination is found unsupported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing, or reverse and grant benefits. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so remand would merely involve the presentation of cumulative evidence. *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). In this instance, proof of disability is strong and remand will serve no purpose other than delay Plaintiff's DIB claim, which was filed over eight years ago. All substantial factual issues have been resolved, and the record reflects that Plaintiff became disabled, as a matter of law, on January 23, 2003.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner for an immediate award of DIB benefits with an onset date of January 23, 2003; and

3. This case be **CLOSED** on the docket of this Court.

February 7, 2014　　　　　　　　　　　　　　　　　　　　　　　　s/ Michael J. Newman
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).